[No. 1699.]

## A. E. HERSHISER and DANIEL HUTCHINSON, APPELLANTS, *v.* B. W. WARD, CHARLES L. KNOX, ET AL., RESPONDENTS.

1. ABSTRACTS OF TITLE—ACTION AGAINST ABSTRACTERS—PLEADINGS—RELIANCE ON ABSTRACT. The complaint against abstracters employed by plaintiff to examine and furnish an abstract of title of a lot, for purpose of which plaintiff had contracted with Hancock, alleging that in reliance upon the pretended abstract of title showing title in said Hancock, without incumbrance, and depending solely thereon, plaintiffs were induced to and did purchase the said land from Hancock and pay him therefor, is sufficient as against a general demurrer, without an allegation that the purchase depended on the abstract defendants were employed to furnish, or that it in any way depended on what the abstract might disclose.

2. SAME—NATURE OF CONTRACT. A complaint against abstracters for furnishing a defective abstract, alleging a hiring to furnish a full and complete abstract, is sufficient without an allegation that the abstract was to be made from any particular date.

3. PLEADINGS—CONCLUSION OF LAW. The allegation, in a complaint against abstracters for furnishing a defective abstract, that plaintiffs were ousted and dispossessed of the land by due course of law by N., is not objectionable on general demurrer, as stating a conclusion of law instead of facts.

4. ABSTRACTS OF TITLE—ACTION AGAINST ABSTRACTERS—PLEADING—EXHAUSTING REMEDY AGAINST GRANTOR. The complaint against abstracters for negligently furnishing a defective abstract, by reason of which plaintiffs lost the property bought by them, need not show an exhaustion of remedy against their grantor, or his insolvency; the contrary state of facts being an affirmative defense.

5. DEMAND ON GRANTOR FOR RETURN OF PRICE. The allegations in the complaint against abstracters for furnishing a defective abstract, in reliance on which they bought the property of Hancock for $1,100, and lost the property because he had no title; that Hancock has refused and still refuses to pay plaintiffs the $1,100, or any part thereof, impliedly shows a demand on Hancock for the return of the money.

6. PLEADING—ALLEGATION OF FACT. The complaint against abstracters for furnishing a defective abstract, alleging that in reliance thereon plaintiffs bought the land of Hancock and paid him $1,100 therefor, taking a deed without warranty or covenant; that Hancock did not have title, and they were ousted by the owner; that Hancock has failed and refused, and still fails and refuses, to pay to plaintiffs the $1,100, or any part thereof, sufficiently alleges as an ultimate fact, as against a general demurrer, that plaintiffs have suffered loss of $1,100.

7. ABSTRACTS OF TITLE—ACTION AGAINST ABSTRACTERS—PLEADING—SHOWING IN ABSTRACT. The complaint against abstracters for furnishing a defective title, alleging that they furnished one showing that H. was the owner of the land "without any incumbrances," is sufficient allegation that the abstract showed that there were no incumbrances.

APPEAL from the District Court of the Second Judicial District of the State of Nevada, Washoe County; *B. F. Curler*, Judge.

Action by A. E. Hershiser and others against B. W. Ward and others. From a judgment in favor of defendants, plaintiffs appeal. **Reversed and remanded.**

The facts are sufficiently stated in the opinion.

*Cooke & Ayres*, for Appellants:

I. That the liability of an abstracter for negligently making an abstract of title, whereby a purchaser is led into purchasing a worthless title, is secondary to a supposed remedy against the purchaser's grantor, is, we believe, without authority of law or reason. Surely such a decision is entirely without precedent. We believe we can speak authoritatively on this point, for we have spared no pains in the search of a precedent on such point, and neither court nor adverse counsel have cited one. The complaint affirmatively shows that the contract between plaintiffs and defendants was an independent one with which Hancock had no connection whatever, and to which he was not a party. So far as the complaint shows, he may never have heard of it. "The undertaking implied by law from engaging in the business

of making abstracts of title for compensation is that the abstracter possesses the requisite knowledge and skill, and that he will use ordinary care in the performance of his duties." (1 Cyc. 214, and cases cited in note 12.)

II. It appears from the complaint that the deed and instrument of conveyance received by plaintiffs from Hancock "contains the words 'grant, bargain and sell,' but does not contain any other warranty or covenant whatsoever, and that plaintiffs have not, nor has either of them, ever at any time received any other warranty or covenant from said Hancock, or at all, relating to or concerning said lands or premises, or the title thereto." Whether or not, then, the plaintiffs had any remedy against Hancock depends upon what covenants are implied from the use of the words "grant, bargain and sell." As near as we are able to understand the decision of the lower court, the opinion of the learned judge thereof proceeded upon the theory that the words "grant, bargain and sell" gave us a warranty of title sufficient to constitute a cause of action against Hancock on covenants, and further that, even though we had no covenants whatsoever, still Hancock would be bound to plaintiffs for money had and received. We presume that the court considered that the common law would imply the promise to repay. However, we are not entirely clear on this point and cannot say that we exactly understood by just what reasoning we were supposed to have a remedy for money had and received. But this is surely not the law. For, as one of the best texts on the subject puts it: "The rule is well settled that, in the absence of fraud, the purchaser of real property takes the title at his own risk, and, if he has not taken the precaution to secure himself by covenants, he has no remedy for his money, though he afterwards be evicted by a paramount title or the land be burdened by incumbrances." (8 Am. & Eng. Ency. Law, 2d ed. 53, and cases cited in note 3.) At common law there was no implied covenants whatever, except such as arose out of the word of feoffment, *dedi*, a word long since in disuse in deeds in this state, and we think pretty much in this country, owing to the change of conditions upon the abolition of the feudal system. The covenants expressed by

the words "grant, bargain and sell" are therefore purely statutory and, being in derogation of the common law, must be construed strictly.

III. Possibly the leading case on this subject in this country is the case of *Douglass* v. *Lewis*, 131 U. S. 75, *et seq.* In that case (opinion by Chief Justice Fuller), at page 82, the court says: "At common law, in the transfer of estates of freehold by deed, a warranty was implied from the word of feoffment, *dedi*, and from no other word, and from words of bargain and sale merely no covenant was implied in any case." And on page 85 of the same opinion the court says: "If, it appears to us, however, the question arises not upon the covenants in a deed, but upon the construction of a statute, which turns certain words of grant into express covenants, the same rule of construction does not apply. In respect to deeds, the words are to be taken most strongly against the party using them, while in respect to statutes, if in derogation of the common law, as that under consideration is, they should be construed strictly." And in the same opinion, at page 87, the court speaks approvingly of the warning given by Chancellor Kent in his Commentaries: "It may not be very inconvenient that those granting words should imply a covenant against the secret acts of the grantor; but beyond that point there is great danger of imposition upon the ignorant and the unwary, if any covenant be implied, that is not stipulated in clear and precise terms." (4 Kent's Commentaries, 473, 474.)

IV. Surely neither in the statement of the evidentiary facts nor in the complaint can there be found anything which comes within the protection of the covenants by our statute implied from the words "grant, bargain and sell," whether that statute be construed either strictly or liberally. We deem it clear and settled beyond the question of a doubt that plaintiffs never had any remedy against Hancock whatever. But, even if they had a remedy against Hancock, defendants having unskillfully performed their contract, from which damages arose to plaintiffs, they were *prima facie* liable, or, more accurately, *prima facie* plaintiffs were damaged by the unskillful performance of defendants of their contract. If,

in fact then, plaintiff had been protected by covenant, so that upon further proof they were not damaged, the burden of showing the same would have devolved upon defendants. Plaintiffs in their complaint have surely made out at least a *prima facie* case, even if they have some action against Hancock, and it would devolve upon defendants to allege and affirmatively prove that they have some protection, by which in fact they are not damaged.

V. If the rule of law is that plaintiffs must exhaust a remedy against their grantor first, why is it that none of the decided cases review that point and establish it? In all of the many abstract cases, both those in which demurrers have been considered, and those where there is no decision upon a demurrer, but where the complaint, so far as the decisions of the courts of last resort show, were regarded as good and no demurrer interposed—in all of those cases, one will look in vain for any allegation that a remedy has been exhausted against the grantor or that the grantor is insolvent. It may be that this reasoning is not strong, but, still, when the only case in which the question has ever been raised in a court of last resort has decided the point to be without merit, and all other cases are silent upon that point, it seems to us that it should be regarded as the settled policy of the law. It is a simple matter, one that would be likely to rise in the mind of an attorney and any court. And silence upon that point seems to us to argue that in all the abstract cases it must have been regarded by counsel as not worth raising and by the courts as not worth considering.

*Curler & King*, for Respondents:

I. The demurrer filed to said second amended complaint is upon the grounds "that said complaint does not state facts sufficient to constitute a cause of action in favor of the plaintiffs and against the defendants, B. W. Ward and Charles L. Knox." In said second amended complaint filed in this court on the 17th day of October, 1904, on page 2 and in paragraph 3 of said complaint, the plaintiffs allege that on or about June 24, 1902, the plaintiffs employed the defendants to make an abstract of a certain piece of land and premises

described in said complaint and in the same paragraph allege that prior to the date of June 24, 1902, they had contracted with one W. H. Hancock for the purchase of said described land, but do not allege that said purchase depended upon the abstract that was to be afterwards furnished by said defendants, or that said purchase in any way depended upon what said abstract might disclose. (*Talpey* v. *Wright*, 61 Ark. 275; *Savings Bank* v. *Ward*, 100 U. S. 195.)

II. That the defendants were to examine and furnish a true, accurate, full, and correct abstract of the title to that certain lot described in said complaint. Said complaint does not allege that said abstract was to be made from the time of the issuing of the patent by the United States, nor any particular date, time, or conveyance. When the abstracter engages to make an abstract from a certain date only, he is under no duty to inquire into the existence of judgments or conveyances recorded prior to that time, and any abstract furnished can be a true, accurate, full, and correct abstract from whatever date commenced. (*Wakefield* v. *Chowen*, 26 Minn. 379; Am. & Eng. Ency. Law, vol. 1, p. 221.) In section 5 of page 3 of said amended complaint the plaintiffs allege that at the time of the purchase of said described land the Bank of Nevada was the owner in fee thereof and that the same appeared of record on the public records of Washoe County, but they allege nothing to show that said mortgage was due and paid prior to the furnishing of the abstract by the defendants, and plaintiffs simply assume that said title was in the Bank of Nevada. (*Turner* v. *White*, 73 Cal. 299.) In paragraph 8 on page 4 of said complaint plaintiffs allege that they were ousted and dispossessed of said land and premises by due course of law by the Bank of Nevada, but they fail to show when or how they were ousted and dispossessed of said land and premises by said Bank of Nevada; they do not show when they went into possession, or that they ever had possession of said land and premises; they do not show by what due course of law the Bank of Nevada ousted and dispossessed the plaintiffs of said land and premises; they simply state a conclusion of law and all the authorities hold that you must state facts, and from those facts the conclusions

are drawn. (*Levinson* v. *Schwartz*, 22 Cal. 229; *Thomas* v. *Desmond*, 63 Cal. 426.) They do not show that the plaintiffs, on discovering the defect in the abstract, took proper measures to avert the loss, and if they failed to do so they cannot hold the abstracters liable. (Am. & Eng. Ency. Law, vol. 1, p. 221; *Roberts* v. *Leon Co.*, 63 Iowa, 76.) The employer, after discovering an error in the abstract, must use ordinary diligence to avert a loss and to inform the abstracters of such error, in order that the latter may take measures to avert the consequences of the mischief, and if, through failure to use these precautions, a loss occurs, the employer cannot recover.

III. Nothing shows that there ever was a demand made of said Hancock for the return of said $1,100, or any part of the same, and without a demand on said Hancock for the return of said $1,100 the plaintiffs cannot say that said Hancock would refuse to return the same if a demand was made; in other words, the plaintiffs have no cause of action against the defendants until all lawful means for the recovery of said $1,100 from said Hancock have failed. It must be shown first that said Hancock is insolvent, and nothing whatever can be collected from him, before the defendants have become liable in damages to said plaintiff. (*Brown* v. *Sims*, 72 Am. St. Rep. 310.)

IV. The plaintiffs claim that they were ousted and dispossessed of said land and premises by due course of law. The plaintiffs allege that, from the defect in the title of the vendor, they have been ousted and dispossessed of said land and premises by due course of law. Now, how can they allege that they have been ousted and dispossessed of said land and premises, without first showing when they went into possession of the same, if they ever did? All of plaintiffs' authorities on this point refer to a deed of warranty, and we do not think it applicable to this case. As the grantor does not covenant against all possible incumbrances, or all interruptions of claim and ouster, it therefore becomes necessary to specify the title paramount by reason of which the covenantee or his assigns have been ousted or disturbed in the possession, bearing in mind that these plaintiffs never had possession. (*Jennings* v. *Kierman*, 55 Pac. 443.)

*Cooke & Ayres*, for Appellants, in reply:

I.　The first attack made upon the sufficiency of our complaint is the statement that the complaint alleges that plaintiffs "contracted with one W. H. Hancock for the purchase of said described land, but does not allege that said purchase depended upon the abstract of title that was to be afterwards furnished by said defendants, or that said purchase in any way depended upon what said abstract might disclose." Upon this point we certainly differ with counsel, and refer to the said second amended complaint where it is alleged "for the purchase of which in fee simple and without incumbrances, the plaintiff had heretofore contracted," etc.　Counsel assumes, without any precedent or authority whatever to support such an assumption, that this is not a sufficient allegation that plaintiffs were to purchase if the title was found good upon an abstract, and not to purchase if the title was not found good.　We submit, however, that, under the contract as stated in the language quoted, if Hancock could not give a "fee simple title free from incumbrance," then defendants were not bound to and would not under the contract purchase the land in question.　The language is almost identical with that of the case of *Morange* v. *Mix*, 44 N. Y. 315, where the facts as stated by the court so far as relevant are:　"At the trial it was proven by the plaintiff that he entered into a contract with one Lichenstein, in August, 1857, to purchase certain lands situate in the City of Brooklyn, to be conveyed to the plaintiff free of incumbrance, except a certain mortgage for $3,000, for the consideration of $10,000 over and above the mortgage; that prior to receiving the deed and paying the consideration the plaintiff made a requisition in writing," etc.　The search was made and the property purchased, and suit was brought and held proper upon an omission from the abstract of certain assessments.　Our allegation was drafted with that statement before us and was modeled thereon, and we believe is practically identical in substance with it.　Our complaint contains every element that was found essential in the case above quoted from, with the additional point that whereas in that case the land was to be conveyed free from

all incumbrances except a certain mortgage, while in our case the complaint alleges that it was to be free from any incumbrances. We also refer to said complaint where it is alleged "that plaintiffs employed defendants to examine, and furnish to plaintiffs a true, accurate, full, and correct abstract of the title to" certain land. "The object of an abstract of title is to enable the purchaser, or his counsel, to pass readily upon the validity of the title in question. (1 Cyc. 213, and note 2.) In *Baker* v. *Caldwell*, 3 Minn. 94, the court quoted with approval a definition from Burrill's Law Dictionary which states that an abstract of title is "intended to show the origin, course and incidents of the title, without the necessity of referring to the deeds themselves." We also refer to the complaint where it is alleged "by which pretended abstract of title it appeared and was shown that the said W. H. Hancock was the owner of the said land and premises in fee simple without any incumbrances; in reliance on said pretended abstract of title, and depending solely thereon, plaintiffs were induced to and did, on or about the 28th day of June, 1902, purchase said land and premises from said Hancock." We can hardly conceive how it could more plainly be made to appear that plaintiffs desired to purchase the land if Hancock's title was good, and that they would not purchase if it were found not to be good, or to be incumbered; that they employed defendants to furnish the abstract in order that they might ascertain what was the condition of the title, and would thereupon decide whether or not to purchase; that the object of the abstract was that they might determine whether or not they would purchase; that they did purchase in reliance upon the abstract only.

II. Counsel again contends that our complaint does not show that the abstract to be furnished was to be "from the Government of the United States down, but was to be from a certain date only." We agree with counsel that "when the abstracter engages to make an abstract from a certain date only, he is under no duty to inquire into anything prior to that date." But there is nothing upon which to base the assertion that such was the case. The allegation of the com-

plaint is that defendants were to furnish a "true, accurate, full, and correct abstract of the title." What, then, is an abstract of title? "An abstract of title is a memorandum or concise statement of the conveyances and incumbrances which appear on the public records affecting the title to real property. The object of the abstract of title is to enable the purchaser, or his counsel, to pass readily upon the validity of the title in question." (1 Cyc. 213, notes 1, 2, 3.)

III. Counsel assumes that we should have alleged that the abstract was to be from the government down, or that the court will infer that it was from some particular date only, subsequent to the defect. Had the word "full" been omitted from the allegation of the kind of abstract that was ordered and furnished, still the allegation would have been sufficient under the authorities to have compelled defendant to furnish an abstract from the source of title to date. But we have made our allegation stronger by the use of the word "full" abstract. This can leave no doubt of the kind of an abstract that was ordered and the kind the one furnished was represented to be. But why should we say from the United States Government down? What presumption is there that all titles must originate in the United States Government? In many of the eastern states the land all belonged to individuals before the adoption of the constitution. In some of the western states titles are traced back to the Mexican government, and down to date through the grants of that government. When one undertakes to make a true and full abstract of title, he necessarily engages to trace the title to its source, whether that source be in the Government of the United States or not. But the point is made the more ridiculous when it is considered that the pretended abstract of title that actually was furnished started with the United States Government, and through a long line of transfers showed the correct course of title, and then, almost at the end of the abstract, omitted the instruments by which, had the abstract been correctly made, Hancock's defect of title would have been disclosed. We consider the point under discussion a mere quibble unworthy of the consideration of

this court and an encroachment upon its time, yet, as the same has been raised and argued in the brief, we deem it expedient to reply thereto.

IV. Respondents object to the manner of our pleading the negligence of plaintiffs, as being conclusions of law. Yet the form we have used has come direct from decided cases. "That defendants were guilty of negligence and want of due care in examining into, and in the investigation of, the title of said land," is copied verbatim from *Gilman* v. *Hovey*, 26 Mo. 280, and which casé is relied upon by 1 Cyc. 218, note 43, as authority for the text. "A general allegation of defendant's want of care in his investigations is sufficient." They also object to our allegation that "by the exercise of proper diligence and skill, they could have discovered," etc., as a conclusion. In the case of *Building Association* v. *Dickens*, 64 S. W., it was held error to sustain demurrer to complaint alleging that "by ordinary diligence he might have known of the same." A number of suits against attorneys for negligence in which the allegations are quite as general as ours, but which have been held good by the courts, are cited in 3 Ency. Pl. & Pr. 107, note 3. We do not consider it necessary to quote these. But the fact that the complaint contains conclusions of law, rather than allegations of fact, is not a matter that can be reached by the general demurrer. A special demurrer is required to reach that.

By the Court, FITZGERALD, C. J.:

On the 1st day of May, 1904, the appellants here, as plaintiffs in the court below, filed therein their second amended complaint; the matters alleged therein and pertinent to this appeal are stated as follows: "That on or about the 24th day of June, 1902, the plaintiffs employed said defendants, as such copartners, as aforesaid, for fees and reward to them by plaintiffs paid, to examine and furnish to plaintiffs a true, accurate, full, and correct abstract of the title to that certain lot, piece, or parcel of land situate, lying, and being in the then Town [now City] of Reno, in the County of Washoe, and State of Nevada, bounded and particularly

described as follows, to wit: That parcel of land situate in Conner's Addition to said Reno, bounded on the west by Ralston Street, on the south by Oak Street, on the east by Nevada Street, and on the north by the section line between Sections 2 and 11, in Township 19 north, Range 19 east, M. D. B. and M., for the purchase of which, in fee simple, and without incumbrances, the plaintiffs had theretofore contracted with one W. H. Hancock, who claimed to be the owner thereof. (4) That defendants, in the performance of the duties or such employment, did thereafter, and on or about the 25th day of June, 1902, furnish to plaintiffs a pretended abstract of title to the said land, and did report and represent to plaintiffs that the same was a full, true, accurate and correct abstract of title to said land; by which pretended abstract of title, it appeared and was shown that the said W. H. Hancock was the owner of said land and premises in fee simple without any incumbrances; in reliance on said pretended abstract of title, and depending solely thereon, plaintiffs were induced to and did, on or about the 28th day of June, 1902, purchase said land and premises from said Hancock, and did pay him therefor the sum of $1,100, in lawful money of the United States, and, as evidence thereof, plaintiffs did then and there take and receive from said Hancock a certain deed or instrument in writing, executed by said Hancock, and duly acknowledged, purporting to convey from said Hancock to plaintiffs the said land and premises in fee; that said deed or instrument in writing contains the words 'grant, bargain, and sell,' but does not contain any other warranty or covenant whatsoever, and that plaintiffs have not, nor has either of them, ever, at any time, received any other warranty or covenant from said Hancock, or at all, relating to or concerning said lands or premises or the title thereto. (5) That said Hancock was not the owner of said lands or premises, or of any interest therein whatever except a mere equitable interest as mortgagee under and by virtue of a certain indenture of mortgage, and that the Bank of Nevada, a corporation, was the owner in fee thereof, and that the same appeared of record on the public records of said Washoe County, of which plain-

tiffs were ignorant, and which defendants could, by the exercise of proper diligence and skill, have discovered and which they failed to discover by omitting to exercise due care and skill; and defendants were guilty of neglect and want of due care in examining into, and in the investigation of, the title of said land. (6) That the said mortgage by and through which said Hancock held said equitable interest, as aforesaid, was given to secure, and did secure, the payment of a certain promissory note, dated and executed November 1, 1897, and, by its terms, payable on demand. That the first plaintiffs, or either of them, discovered or learned that said Hancock was not the owner in fee of said lands and premises, but was the holder only of said equitable interest, as aforesaid, was on or about the ......... day of February, 1904, and more than six years after the date and execution of said promissory note, and after any action to foreclose the said mortgage or collect the said note was barred by section 3718 of the Compiled Laws of Nevada, and when the said equitable interest which said Hancock held in and to said lands and premises, as aforesaid, had, without the fault of these plaintiffs, or either of them, become of no value whatever. (7) That said Hancock has failed and refused, and still does fail and refuse, to pay to plaintiffs, and said plaintiffs have not received from said Hancock, or at all, the said sum of $1,100, or any part thereof. (8) That by reason of the said Hancock's want of title, and the fact that plaintiffs took no title by said deed from Hancock, and the fact that said Bank of Nevada was the owner of said lands and premises, as aforesaid, the plaintiffs were ousted and dispossessed of said land and premises by due course of law. Wherefore plaintiffs pray judgment against said defendants, jointly and severally, in the sum of $1,100, together with interest thereon at the legal rate from the 28th day of June, 1902, and for costs and disbursements of suit."

To this complaint defendants filed a general demurrer, the court sustained the demurrer, and, on plaintiffs declining to amend, gave judgment for the defendants. From said judgment, this appeal is taken.

To sustain the judgment respondent's counsel make, if

we correctly gather them from their brief, many points of objection to the complaint.

1. That the plaintiffs "do not allege that said purchase depended upon the abstract that was to be afterwards furnished to them by said defendants, or that said purchase in any way depended upon what said abstract might disclose." Without going into an elaborate analysis of the allegation on this point, we deem it sufficient to meet the assault of a general demurrer; and whether it was sufficient to repel a special demurrer on the ground stated is not before us for determination.

2. Counsel's second point is that: "Said complaint does not allege that said abstract was to be made from the time of the issuing of the patent by the United States, nor from any particular date, time, or conveyance." We think this allegation is sufficient. It required defendants to furnish a "full and complete" abstract. We can see no reason why respondents should arbitrarily take any particular date, and say that, prior to that date, they were not required to make search and report of the title.

3. As a third point counsel say: "In section 5 of page 3 of said amended complaint, the plaintiffs allege that, at the time of the purchase of said described land the Bank of Nevada was the owner in fee thereof, and that the same appeared of record on the public records of Washoe County; but they allege nothing to show that said mortgage was not due and paid prior to the furnishing of the abstract by defendants, and plaintiffs simply assume that said title was in the Bank of Nevada." On the contrary, the allegation is an "assertion," not an "assumption," that the "Bank of Nevada was the owner in fee," etc.

4. Under the fourth point counsel say "plaintiffs allege that they were ousted and dispossessed of said land and premises by due course of law, by the Bank of Nevada, but they fail to show when or how they were ousted and dispossessed of said land and premises by said Bank of Nevada. They do not show when they went into possession or that they ever had possession of said land and premises. They do not show by what due course of law the Bank of Nevada

ousted and dispossessed the plaintiffs of said land and premises. They simply state a conclusion of law, and all the authorities hold that you must state facts, and from those facts the conclusions are drawn." This allegation, too, we think, good under the general demurrer.

5.    Fifth, counsel claim that the complaint does not "show that the plaintiffs, on discovering the defect in the abstract, took proper measures to avert the loss; and, if they fail to do so, cannot hold the abstracters liable." This claim is, we think, untenable. Plaintiffs were not required to show this. If the facts were otherwise, it was a matter of affirmative defense to be set up by defendants.

6.    The sixth point states that there was "nothing to show that there ever was a demand made of said Hancock for the return of said $1,100, or any part of the same, and, without a demand on said Hancock for the return of said $1,100, the plaintiffs cannot say that said Hancock would refuse to return the same if a demand was made, in other words, the plaintiffs have no cause of action against the defendants until all lawful means for the recovery of said $1,100 from said Hancock have failed. It must be shown, first, that said Hancock is insolvent, and nothing whatever can be collected from him, before the defendants have become liable in damages to said plaintiff." We think there was. It said "Hancock has  *  *  *  refused  *  *  *  and still does *  *  *  refuse to pay plaintiffs  *  *  *  the sum of $1,100, or any part thereof." Refusal to do a thing implies a demand made to do it. Certainly this would be so on general demurrer.

7.    The seventh point is that there is no allegation that the plaintiffs have suffered loss of $1,100, or any sum; but only the statement of a conclusion of law that plaintiffs have so suffered. On the contrary, we think an inspection of the allegation in this respect shows allegation of an ultimate fact, good as against general demurrer at least.

8.    Counsel say there was no report in the abstract of title furnished by respondents that the land in question was free from all incumbrances; but only that it was from some incumbrances. Their contention is expressed as follows: "The attorneys for the plaintiff in their said brief on the

demurrer, compare the *Morange* v. *Mix* case, in 44 N. Y. 315, with this case, and claim that this case is much stronger than the New York case; and we call the court's attention to line 4 on page 2 of their brief, where this language is found: 'While, in our case, the complaint alleges that it was to be free from any incumbrance.' Webster defines the word 'any' as one out of many, indefinite. 'Nor knoweth any man the Father, save the Son.' ' (Matt. xi, 27.) It is also defined as 'some,' an indefinite number or quantity, as 'Are there any witnesses present?' Now, the word 'any' incumbrance does not mean all incumbrances, as the word 'any,' in its largest meaning, simply means 'some,' and does not mean from all incumbrances."

The language in the allegation (allegation 4) is: "That defendants, in the performance of the duties of such employment, did thereafter, and on or about the 25th day of June, 1902, furnish to plaintiffs a pretended abstract of title to the said land, and did report and represent to plaintiffs that the same was a full, true, accurate, and correct abstract of the title to said land, by which pretended abstract of title it appeared and was shown that the said W. H. Hancock was the owner of said land and premises in fee simple without any incumbrances; in reliance on said pretended abstract of title, and depending solely thereon, plaintiffs were induced to and did, on or about the 28th day of June, 1902, purchase said land and premises from said Hancock and did pay him therefor the sum of $1,100 in lawful money of the United States." The allegation is that "Hancock was the owner of said land and premises in fee simple without any incumbrances." The phrase "without any incumbrances" means just what it says. It means there were no incumbrances. Indeed, it means there was not a single incumbrance. It could not possibly mean there were some incumbrances, or even there was a single incumbrance. So to hold would be a strange perversion of language.

A few other points are made in the brief of respondents; but we think they are not of such moment as to require mention here, except the following:

9. Ninth point, if we correctly apprehend it, is this:

That in case of negligence in the abstracter's work, and consequent loss therefrom, the damaged employer cannot sue the negligent abstracter until he has exhausted all remedy against the grantor of the title involved or shown that such grantor is insolvent. And, further, that this showing of exhaustion of remedy against grantor or his insolvency is an affirmative showing on the part of the plaintiff, and that, without such showing, his complaint would be bad on general demurrer. Is this the law? We think it is not necessary that such affirmative showing be made in the complaint, and it is unnecessary now to determine whether the same would constitute a defense if pleaded by answer. It is urged in the brief that Hancock may have paid the damages of $1,100 to plaintiff. It is alleged in the complaint, however, that Hancock has not so paid. It is also urged that Hancock may be able to pay it on being sued. Defendants' obligation was a direct contract to furnish plaintiff a full, complete, and correct abstract of title to the land in question, such as would protect the plaintiffs from incurring the loss that they have alleged. If plaintiffs had it in their power to protect themselves from such loss by any course of action that they could be reasonably and legally required to take, that is an affirmative defense that respondents should set up and plead to defeat plaintiffs' action. The case of *Morange* v. *Mix*, 44 N. Y. 315, throws considerable light on this question.

We think the judgment appealed from in this case is erroneous. Said judgment is reversed, and the case is remanded to the trial court, for further proceedings in accordance with this opinion.